IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS

 

════════════

No. 03-0914 

════════════

 

Hyundai Motor Co. and Hyundai
Motor America, Inc., Petitioners,

 

v.

 

Victor Manuel Vasquez and
Brenda Suarez Vasquez, Individually and on Behalf of the Estate of Alyssa Amber
Vasquez, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Fourth District of
Texas

════════════════════════════════════════════════════

 

Argued February
15, 2006 and January 6, 2005

 

Justice
Wainwright, joined by Justice
Johnson, dissenting.

 

 

I join Justice
Medina=s
dissent[1] and write to
emphasize two points.

The Court identifies the issue in this case
as whether the trial court abused its discretion in refusing to allow one
question during voir dire.  The Court identifies “the
question” in the following exchange at the trial court:

THE
COURT: What is the type of question you need to ask other than what has already
been asked about their own individual use of seat belts or not seat belts?

 

[PLAINTIFFS= COUNSEL]: Your Honor, I
need to know whether or not they would be predisposed regardless of the
evidence to ─ Their preconceived notion is that if there is no seat belt
in use, no matter what else the evidence is, that they could not be fair and
impartial.








 

THE
COURT: And that=s the
type of question you are asking to ask?

 

[PLAINTIFFS=
COUNSEL]: That=s the
kind of question I need to ask . . . .

By so framing the issue, the Court makes a hard case
easier.  Certainly there is no entitlement to ask a specific question
during voir dire.  Even if a proper question to a jury panel is barred by
a trial court, counsel can often rephrase the question to probe the relevant
subject.  I agree with Justice
Medina; the central issue in this case should not be the propriety of
asking this one question.  The key issue is the trial court=s barring counsel from
inquiring about an entire and admittedly relevant subject during voir
dire.  This does not mean that voir dire should be lengthy, only that
properly limited voir dire should be allowed on the important issues in a case.








After going through two jury panels and
trying to seat a jury during the third, the trial judge, understandably
frustrated, precluded not just one question but any further questioning on seat
belts.  This ruling was an about‑face from the procedure she had
established for the questioning of the third panel.  Following the
dismissal of the second panel, the trial court held a hearing and outlined a
procedure for the third voir dire: the court and counsel could conduct the
initial questioning, absent case-specific facts, about venire panel members= attitudes toward seat belt
usage; subsequent specific questioning by counsel regarding seat belt usage
would be permitted only during the individual questioning of panel members at
the bench.  During general questioning of the third voir dire panel,
plaintiffs= counsel
approached the bench seeking clarification of the seat belt usage questions he
could ask.[2]  The
court allowed questions about the panelists=
personal seat belt habits, but not about panelists= attitudes towards the seat belt usage of
others or their personal attitudes concerning the seat-belting of minors. 
The court reserved for individual questioning at the bench after general voir
dire any questions concerning seat-belting children and seat belt usage of
other persons.  In accord with the court=s
ruling, plaintiffs=
counsel only asked questions about the venire members= personal seat belt usage.  After general
questioning, plaintiffs=
counsel reminded the trial judge that, per her instructions, he had reserved
questioning of venire members=
attitudes about seat belt usage of others, including minors, until individual
questioning of panelists at the bench.  The trial judge refused to allow
the questioning, instructing “we are not going any further into seat
belts.”  The Court concludes that counsel=s objections and statements and the context of
the discussion with the court do not preserve plaintiffs= objection.  I disagree.








By the third voir dire, the parties knew
that asking questions specifically about Amber was too emotionally sensitive
and was barred.  Despite plaintiffs=
less-than-perfect single statement on which the Court=s opinion turns, the rest of the bench
discussions in the record reveal the trial court and the attorneys were
discussing a category of questions regarding seat belt usage and not just
“a question.”  The trial court=s
ruling precluded an entire category of questions that were not only clearly
relevant but were central to the case for all parties, and the objection to the
trial court=s ruling
preserved error on plaintiffs=
complaint that it did not have an opportunity to ask about individual jurors= seat belt attitudes,
especially toward seat-belting minors.  Whether the questions would have
revealed disqualifying bias or not, the answers would have assisted in the
intelligent exercise of peremptory challenges.[3] 
This is the harder issue which the Court concludes was not preserved.








The Court says that counsel did not
sufficiently apprise the trial judge of “additional inquiries” that
he wanted to ask.  __ S.W.3d __, __.  This contradicts the
information in the record.  The trial court=s
discussions with counsel at the bench, particularly during the general
questioning of the third voir dire, demonstrate the court was well aware
plaintiffs= counsel
sought to ask questions concerning juror attitudes for seat belt usage of
others, particularly of minors.[4]  In
addition to objecting to being precluded from “exploring the jurors= attitudes” on this
topic, plaintiffs=
counsel explained that he wanted to ask the questions he asked during the first
voir dire, describing them as “attitude questions about belting, seat
belting, and seat belting habits much akin to what [he] did the last time [he]
did general voir dire.”[5]  If the
prior voir dire questioning had occurred weeks or months ago, perhaps memories
would have been hazy about what inquiries had been made, but that was not the
case.  All three voir dires occurred within a five-day period C over three consecutive
weekdays.  This objection by counsel, the trial court=s instruction on the types
of questions to reserve for individual questioning, and the counsel=s reference to the
questions he had asked in the earlier voir dire identify the questions and
types of questions at issue and clearly brought them to the trial judge=s attention.  Finally,
during reargument of this case, Hyundai=s
counsel acknowledged the trial court knew which types of questions plaintiffs= counsel wanted to pursue:
“In all honesty she had to know, and she had to know because of the
questions that had gone on previously. . . .”  Nevertheless, the
Court concludes otherwise.  

The Court holds that counsel=s objection during the
third voir dire and request to ask a group of questions regarding the belting
of minors “much akin to what” he asked during the first voir dire
does not preserve error.  See supra note 5.  During the third
voir dire, the trial judge acknowledged that she knew counsel wanted to ask
these types of questions about practices for seat-belting children.  See
supra note 4.  Because counsel=s
reference to the group of questions asked in the first voir dire essentially
provided the trial court with a list of questions dictated in the record only a
few days earlier, it is unclear what the Court requires to preserve error for
restricting voir dire questioning.  Compare the Court=s reliance on Babcock v.
N.W. Memorial Hospital, 767 S.W.2d 705, 707-08 (Tex. 1989), holding
litigants need not present a list of each intended voir dire question, with the
Court=s conclusion
that the Vasquezes “did not frame additional inquiries” to preserve
their complaint after the trial court revisited its discussion of questions
related to seat‑belting practices.  __ S.W.3d at __.  Perhaps the
safest approach would be to provide the trial court with a list of questions,
in writing or on the record, every time the trial court discusses the
preclusion of a category of questions.

Because the Court sidesteps the harder issue
posed by this case and fails to recognize the asserted error was preserved (as
the record shows and the trial court and Hyundai acknowledge), I respectfully
dissent.

 

 








________________________________________

J. Dale Wainwright

Justice

 

 

OPINION
DELIVERED: March 10, 2006









[1] However, I express no opinion on
whether I agree with the result reached by the majority or the dissent in Standefer
v. State, 59 S.W.3d 177 (Tex. Crim. App. 2001).





[2] Plaintiffs' counsel stated:

 

[PLAINTIFFS= COUNSEL]: It is my understanding that
the Court has instructed me not to ask the question about the child being not
belted and I think I know how to make that distinction, although for the record
I do object that the Court instructed me not to go into that area of
inquiry.  I think that objection is already on the record.

It is my
understanding that I want to ask them questions B B What I want to do is ask them general questions about their general
attitudes about belting such as B B

 

THE COURT: Their own personal
habits.

 

[PLAINTIFFS= COUNSEL]: Their own personal
habits such as how many of you belt before you start the car.

 

After hearing arguments from both
parties, the court ruled, "I'm going to let you ask general questions
about belting.  Not about children, but about their attitudes about
putting seat belts on themselves."

 





[3] Presumably, the trial court also
would have precluded defendants from asking about panelists= general attitudes toward airbags,
which is also a central issue in this case.





[4] At the bench conference during the
third voir dire's general questioning, plaintiffs= counsel asked for additional clarification to
determine what he could ask during general questioning rather than reserve for
individual questioning.

 

[PLAINTIFFS= COUNSEL]: The Court is permitting
questioning about general attitudes and personal practice.  It's not clear
to me if that personal practice would include those of you who have children,
do you ensure that all of your children are belted before you start the car.

 

THE COURT: We will do that on
individual if, in fact, you have gotten something that you need.  We are
not doing children on this one.

 

The court
indicated that it was aware plaintiffs' counsel wanted to ask questions about
children and seat belts.





[5] The trial court precluded counsel
from asking a number of unobjectionable questions that he had asked during the
first voir dire, including (quoted as in the record):

 

[PLAINTIFFS= COUNSEL]: How many of you require
your passengers to [put their seat belt on] before you move the car?

. . .

 

Those of you with children that you
still drive around, okay, how many of you have been known to have to turn
around and tell your child, Put your seat belt on before I stop this car and do
something to you?  Okay.  So those of you that raised your hand that
said you require your passengers to put the belt on before it moves, if your
child is the passenger, sometimes they don=t do that until you prod them or make them do it.  Is
that everyone=s experience?  Is that not the
experience of any of you?

 

[PROSPECTIVE JUROR]: I have
grandchildren that ride.

 

[PLAINTIFFS= COUNSEL]: Children or
grandchildren.  Thank you.

 

[PROSPECTIVE JUROR]: I tell them
first thing to put them on, but sometimes they don=t listen and I repeat myself.

 

[PLAINTIFFS= COUNSEL]: Okay.  I imagine if
you are leaving from your residence, you sort of going through a stage of, you
know, you pull out of your driveway and you are approaching that right turn or
left turn onto the major street that you are going to travel on, and the whole
trip from your driveway to the first turn to get you on the trip is where you
are telling everybody, Do you have your belts on.  Anyone have a
remarkably different experience than that with children?  All your kids
always put their belt on immediately and always obey you?